392 S.E.2d 377 (1990)
326 N.C. 771
AETNA CASUALTY & SURETY COMPANY
v.
NATIONWIDE MUTUAL INSURANCE COMPANY, William T. Sawyer, Jr., John William Slater, Jr., and Ralph Landon McLean.
No. 383A89.
Supreme Court of North Carolina.
June 13, 1990.
Poisson, Barnhill & Britt by James R. Sugg, Jr., Wilmington, for plaintiff-appellant.
Murchison, Taylor, Kendrick, Gibson & Davenport by Vaiden P. Kendrick, Wilmington, for defendants-appellees Nationwide Mut. Ins. Co. and Ralph Landon McLean.
FRYE, Justice.
Plaintiff appeals from the Court of Appeals' decision reversing summary judgment in its favor. Resolution of this appeal depends upon the proper interpretation of section A.8 of an automobile insurance policy issued by plaintiff which excludes liability coverage for any person "using a vehicle without a reasonable belief that that person is entitled to do so."
On 3 October 1986, John William Slater, Jr., was involved in a motor vehicle collision with Ralph Landon McLean. McLean was injured and brought action against Slater. At the time of the collision, Slater was driving a truck owned by William T. Sawyer, Jr. Sawyer was insured by plaintiff Aetna Casualty and Surety Company (Aetna). McLean was insured for underinsured motorist coverage by Nationwide Mutual Insurance Company (Nationwide). Sawyer's *378 policy with Aetna provided liability coverage in the amount of $50,000 for one in lawful possession of a covered vehicle. Plaintiff Aetna contends that Slater is not an insured under the terms of the policy issued to Sawyer since Slater did not have Sawyer's permission to drive the truck. Aetna further contends that N.C.G.S. § 20-279.21(b)(2) does not cover Slater because at the time of the accident Slater knew he was improperly driving without a license. In the alternative, Aetna contends that if any coverage is allowed, then it is the minimum amount required by N.C.G.S. § 20-279.21(b)(2), which provides for $25,000 coverage of a person operating a vehicle with express or implied permission or a person in lawful possession. See N.C. G.S. § 20-279.21(b)(2) (1989).
On the day of the accident, Sawyer gave Gary Fall, his employee, permission to drive Sawyer's company truck from the jobsite to Fall's home. Sawyer further instructed Fall that no one else was to drive the truck. On that same day, Fall, while giving Slater a ride home, stopped at Slater's brother's house to play cards. While at the house, Fall asked Slater to drive the truck to the store for a case of beer. Slater, while in route to the store and while driving without a license, was involved in the accident with McLean. McLean seeks to recover from Sawyer's policy with Aetna.
Plaintiff Aetna filed this action against defendants Nationwide, Sawyer, Slater, and McLean seeking declaratory judgment to determine that plaintiff owed no coverage beyond the amount provided for in N.C.G.S. § 20-279.21(b)(2). Defendants McLean and Nationwide answered, and plaintiff subsequently filed a motion for summary judgment. Upon call of the case for hearing, defendants moved to allow oral testimony from Slater; the motion was allowed.
During the summary judgment hearing, Slater testified that on the night of the accident he was employed by Sawyer and Fall who operated as F & S Builders; that Fall customarily drove the truck home every night; that both he and Fall lived in Carolina Beach, and Fall would give Slater a ride to and from work; that on the day of the accident, Fall stopped at Slater's brother's place to play cards and that Fall was going to take him home later that evening; that Fall asked him to take the truck, go to the store, and get some beer; and that the accident occurred on that occasion.
In response to the question of whether he believed he was entitled to operate the truck on that occasion, Slater responded as follows:
A. No, not really, because I know that it's wrong to be driving a car without a license regardless of what goes on, so I cleared that off the air. I got in the truck because I didn't want them driving. In fact, I wouldn't have let him drove (sic) me home anyways since he was already drinking. In fact, he had already made his mind up to stay at my dad's house that evening.
Q. So the reason you didn't think you should be driving was because you didn't have a license; is that correct?
A. Right, I didn't tell him that. No, I didn't tell him.
Slater later testified that, at the time of the accident, he thought Fall was a part owner of the company.
The trial court determined that there was no genuine issue of material fact and entered summary judgment in favor of plaintiff, granting the declaratory relief sought in the complaint. Defendants McLean and Nationwide appealed to the Court of Appeals from the order granting summary judgment. A divided panel of the Court of Appeals reversed, holding that the trial court erred in granting plaintiff's motion for summary judgment. Aetna Casualty & Surety Co. v. Nationwide Mut. Ins. Co., 95 N.C.App. at 181, 381 S.E.2d at 876. We affirm the decision of the Court of Appeals.
The issue on appeal is whether summary judgment was properly granted in favor of plaintiff. The underlying question is whether a person knowingly operating a motor vehicle without a driver's license may nevertheless have a reasonable belief that he was entitled to operate the vehicle on a given date and time. This is a question *379 of first impression before this Court. We have previously held that where the driver is required by the insured's policy to have permission from the insured and does not, then the driver is not covered by the insured's policy. See Bailey v. Insurance Company, 265 N.C. 675, 144 S.E.2d 898 (1965). We have not, however, dealt with the question where the policy excludes coverage for persons who do not have a reasonable belief that they are entitled to drive an insured's vehicle. Although the factual situation in the present case is the same as in BaileyA, the insured, loans the vehicle to B; B then loans the vehicle to C, without A's permissionnonetheless, a different result may be reached because liability coverage depends on the language of the policy, and summary judgment should be granted or denied accordingly.
"Summary judgment is granted when, viewing the record in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Beckwith v. Llewellyn, 326 N.C. 569, 573, 391 S.E.2d 189, 191 (1990). The burden is upon the party moving for summary judgment to show, in order to be entitled to judgment, that no questions of fact remain to be resolved. Bank v. Gillespie, 291 N.C. 303, 230 S.E.2d 375 (1976).
In the instant case, plaintiff, as the moving party, has the burden of showing that no material question of fact remains unresolved. The policy issued by plaintiff to Sawyer provides liability coverage, not only to covered persons and covered vehicles, but also to "any person using your covered auto." Slater was clearly a person using Sawyer's truck which was clearly a covered auto within the meaning of the coverage portion of Sawyer's liability policy. However, the Exclusions portion of the policy denies coverage for any person "using a vehicle without a reasonable belief that that person is entitled to do so." The crucial question in this case is whether Slater was operating Sawyer's vehicle without a reasonable belief that he was entitled to do so.
Plaintiff contends that since Slater had no driver's license and knew that it was wrong to drive without a license, he could not have had a reasonable belief that he was entitled to operate the vehicle at the time of the accident. Thus, plaintiff contends summary judgment was proper in its favor. The Court of Appeals held, and we agree, that the fact that Slater knew that he had no legal right to drive, is distinguishable from the dispositive question under the policy exclusion of Slater's reasonable belief of being "entitled" to drive the vehicle based upon the permission of the person in possession of the vehicle. The question under the policy is not one of legalitywhether the operator had legal permission of the owner, or legal permission from the state in the form of a valid driver's license; rather, it is a question of factdid the operator have a reasonable belief that, at the time of the accident, he was entitled to drive the vehicle? In such cases, the ultimate question is one of the state of mind of the operator, a factual question for the jury.
Although this is a case of first impression in this Court, the same issue was raised and answered two years ago in a federal case, interpreting North Carolina law. Cooper v. State Farm Mutual Automobile Insurance Co., 849 F.2d 496, 499 (11th Cir.1988). In Cooper, two teenagers, David Carlton and Kathy Cooper, ran away from home while driving an automobile owned by David's father, Darryl Carlton. Kathy's father, Gerald Cooper, was insured under a State Farm policy containing language identical to that in plaintiff's policy.
The court in Cooper first addressed the issue of whether the absence of a driver's license was conclusive. At the time of the accident, Kathy, a fourteen-year-old, was operating the automobile. The court concluded that the legal right to drive was merely one factor to be considered in determining whether an unlicensed driver had a reasonable belief that he was entitled to operate the insured's vehicle. Id. The court further concluded that summary judgment was improperly granted since the issue was one for the jury. Id.
*380 In Cooper, the court held that "under North Carolina law one need not necessarily show that he had a legal right to drive to establish a reasonable belief of entitlement under the clause at issue...." Id. The court's holding was based on (1) North Carolina's existing law under permissive use clauses, see Truelove v. Nationwide Mut. Ins. Co., 5 N.C.App. 272, 168 S.E.2d 59 (1969) (under permissive use clauses the legal right to drive is merely one factor in determining whether an unlicensed driver had permission); and (2) North Carolina's case law construing ambiguous provisions in insurance policies against the insurer, see Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co., 276 N.C. 348, 172 S.E.2d 518 (1970).
In the present case, the record before the trial judge at the summary judgment hearing consisted of: (1) Sawyer's affidavit that Slater did not have permission from Sawyer to drive Sawyer's truck; (2) Sawyer's liability policy with Aetna; and (3) Slater's oral testimonythat Fall customarily drove the truck home every night, that Fall told Slater to drive the truck to the store, that Fall had been drinking at the time, that Slater knew he was wrong for driving without a license, and that Slater believed Fall was part owner of the company that owned the truck.
Summary judgment was apparently entered based on plaintiff's assertion that Sawyer's policy did not extend to Slater since Slater could not have had a reasonable belief that he was entitled to drive Sawyer's truck when he knew he was wrong for driving without a license. However, Slater's testimony raises a question of whether he reasonably believed under the circumstances that he was entitled to drive the truck. Although Slater answered in the negative when asked if he believed he was entitled to operate the truck, he qualified his answer by giving as a reason the fact that he was driving without a license. A jury might well conclude that while he knew that it was "wrong to be driving without a license regardless of what goes on," he nevertheless believed he was entitled to drive the truck under the circumstances because he believed that he had the permission of the owner to do so. Since Slater's reasonable belief is a question of fact to be determined by a jury, summary judgment on this ground was improper, and the Court of Appeals was correct in reversing the trial court's ruling. We therefore affirm the Court of Appeals' decision.
AFFIRMED.